THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PERRY NEWTON, Defendant-Appellant.

(No. 58620;

First District (4th Division)—February 27, 1974.

Paul Bradley, Deputy Defender, of Chicago (Kenneth L. Jones, Assistant Appellate Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BURMAN delivered the opinion of the court:

This is an appeal from an order of the trial court revoking defendant's probation.

The defendant, Perry Newton, and one Donald Jennings, were originally charged by indictment with two counts of attempted murder and two counts of armed robbery. The Public Defender was appointed to represent the defendant and a plea of guilty was entered. At the hearing on his guilty plea, it was stipulated that the defendant, who was carrying a rifle, and two other men committed an armed robbery. During a subsequent chase the occupants of the fleeing car shot at the police eight to twelve times. They abandoned the car, hid in a field, and were later captured and taken into custody. In granting the defendant a 5-year probation sentence on June 19, 1970, the court was impressed with defendant's scholastic background and the fact that the defendant had been cooperating with law enforcement agencies. He was 18 years old and had never been convicted of a felony. The order granting probation entered by the judge included the special condition that the defendant re-enter and finish high school and thereafter either continue his education or become regularly and gainfully employed.

About 1 year later a warrant was issued for defendant's arrest for violation of probation and a rule to show cause why his probation should not be terminated was entered. The report of the probation officer recited that in June 1971, a warrant was issued for defendant's arrest when he failed to appear in court to answer to the charge of violation of the Narcotic Drug Act (Ill. Rev. Stat. 1969, ch. 38, par. 22—3). The report also indicated that the defendant was scheduled to appear in court on November 24, 1971, on charges of armed robbery and escape. In regard to the latter charges, it appeared that on January 15, 1971, the defendant and another unknown person committed an armed robbery at the Robo Car Wash. The defendant was positively identified by the complainants. It further appeared that on January 19, 1971, while in the custody of the Harvey Police Department in their lock-up, the defendant and another prisoner walked out of the cell and left the premises.

In a subsequent supplementary report, the probation officer reported that it appeared that on December 25, 1971, the defendant and three others robbed several patrons and employees at Gino's Steak House. When the general manager attempted to open the door to the office, after being demanded to open the safe, he was struck on the head with a sawed-off shotgun. The defendant leveled his shotgun at a security agent who walked in and was shot in the face by the police. All the robbers were armed.

A hearing was held on the rule to show cause why the probation should not be revoked. According to the evidence presented by the State, the defendant had failed to appear on scheduled court dates, had not reported to his probation officer, had failed to either stay in school or become gainfully employed, and had admittedly carried a single-barreled shot gun and a .25 caliber pistol during a holdup that took place at Gino's Steak House on December 25, 1971, all in violation of the terms of his probation.

In his own behalf the defendant testified that after being put on probation he was in school until December 1970. He did not attend school or work during 1971 because he was in jail for all but 3 months during that year, having been arrested at four different times in connection with three separate and unrelated incidents. He further testified that on the occasion of the December 25 holdup he had been working as a police informant and had told the police that the robbery was going to take place. Nick Graves, a policeman, told him "to go there with them." Nick Graves was also one of the victims of the attempted murder charge to which the defendant had originally plead guilty and for which he was placed on probation. When the police came to the scene, the defendant ran through the steak house and was shot in the face and charges of

robbery were lodged against him. Because of his wound he spent the next few weeks in the hospital and was unable to appear at a scheduled court date on December 30, 1971, relating to the revocation of his probation.

At the conclusion of the evidence the trial judge made the following findings of fact:

> "Based upon the evidence that has been presented to this Court in all of the hearings previously referred to and from the record that has been before this Court since the rule was filed on November 19, 1972, the Court hereby finds that the defendant failed to report to the Probation Department, as required by order of Court, after December 1970; second, that the Court hereby finds that he failed to comply with the condition of probation that he either continue in school or be regularly and gainfully employed while on probation; and, thirdly, that he failed to appear as ordered by the Court before this Court on December 30, 1971; fourthly, that on December 25, 1971, the defendant has [sic] in his possession, while under order of this Court to appear before this Court on December 30, 1971, a single-barrel shotgun and a .25 caliber pistol, and that his failure to report before this Court on December 30, 1971, was as a result of his own conduct."

The defendant first contends that the trial court erred in finding that he was in violation of his probation with regard to the armed robbery that occurred on December 25, 1970, because he raised the defense of entrapment to that incident and the State did not rebut that defense. It is argued that the defendant's mere presence at the scene of a crime with weapons is not sufficient to classify him as an accomplice to that crime when he is acting in the capacity of a police informer.

■■ The defendant never testified, however, that the police told him to be armed. The undisputed evidence is that the defendant was carrying a shotgun and a pistol at the time he claimed he was performing this undercover mission. He offered no explanation of why he carried the weapons. Even if his provocative story about being told by policeman Graves to go along with the robbers to the scene of the crime had some truth in it (and it seems the trial judge was not so convinced), his unlawful carrying of these deadly weapons would alone constitute a plain violation of probation. It is inherent in any probation that the defendant not violate any penal statute and here the defendant was found to have been in unlawful possession of firearms. See *People v. Morales*, 2 Ill.App.3d 358, 276 N.E.2d 391.

Furthermore the evidence overwhelmingly showed that in addition to the aforementioned incident, the defendant was charged with other

criminal offenses while on probation and was in violation of court orders that were entered when the trial judge granted him probation. There was more than sufficient proof presented to show that the defendant had deliberately violated the trust that a most lenient judge had placed in him. The revocation of probation is an act within the sound discretion of the trial court and unless that discretion has been abused we will not disturb the order. (*People v. Sims*, 32 Ill.2d 591, 208 N.E.2d 569.) There was clearly no such abuse here. In view of this, we do not feel compelled to consider at any length the contention that the court abused its discretion in finding that the defendant violated his probation, *inter alia*, by not reporting to the probation department and by not working or attending school during a period when he was in jail for all but 3 months.

It is next contended that the provision of the Juvenile Court Act dealing with the age of a juvenile offender, in force at the time of defendant's conviction, was unconstitutional. The record shows that defendant was 17 years old at the time of the commission of the original armed robbery for which he was put on probation. Illinois Revised Statutes 1969, ch. 37, par. 702—2, classified a delinquent minor as a male under the age of 17 years or a female under the age of 18 years who violated a law or ordinance. It is argued that by virtue of this classification the protections of the Juvenile Court Act were afforded to 17 year old females, but not to 17 year old males, and that this constituted a denial of equal protection guaranteed by the fourteenth amendment to the United States Constitution and article I, section 2, and article I, section 18 of the Illinois State Constitution.

The briefs in this case were written before the Illinois Supreme Court's recent decision in *People v. McCalvin*, 55 Ill.2d 161, 302 N.E.2d 342. There the court reaffirmed *People v. Pardo*, 47 Ill.2d 420, 265 N.E.2d 656, *appeal dismissed for want of substantial federal question*, 402 U.S. 992, where it was held that the age classification in article 2 of the Juvenile Court Act did not violate the equal protection clause. *McCalvin* is dispositive of the issue raised here and further elaboration is unnecessary.

It is also contended that the consecutive sentences of 5 to 10 years and 5 to 15 years in the penitentiary are unduly excessive because the violations upon which probation was revoked were insufficient to warrant such sentences. It is emphasized that defendant was 17 years old at the time he committed the original offense and had never before been convicted of a felony, and that the lengthy minimum sentence will aggravate the possibility of his rehabilitation.

It is fundamental that when revoking probation, the trial judge may sentence the defendant to any term to which the defendant might

have been sentenced at the conclusion of the original trial. (Ill. Rev. Stat. 1969, ch. 38, par. 117—3(d); 1972 Supp., ch. 38, par. 1005—6—4(e).) We recognize also, however, that punishment for any offense raised in the probation revocation hearing should be imposed after conviction on that charge and not by indirection in the sentence imposed for the original charge after violation of probation is determined. (See *People v. Lillie*, 79 Ill.App.2d 174, 223 N.E.2d 716.) Provocation engendered by defendant's violation of the terms of his probation is not appropriate reason for increasing the severity of his sentence. *People v. McCall*, 7 Ill.App.3d 135, 287 N.E.2d 45.

■ ■ In view of the gravity of the offenses for which defendant was originally placed on probation, we do not feel that the trial judge acted arbitrarily in setting the maximum and minimum limits on either sentence. Both are within the prescribed statutory limitations. We will, however, modify the sentences by making them run concurrently rather than consecutively. Ill. Rev. Stat. 1971, ch. 110A, par. 615(b).

■ ■ We finally note that the defendant filed a motion in this court on November 14, 1973, in which he seeks credit for the time he served on probation in accordance with § 5—6—4 of the new Unified Code of Corrections (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—6—4). Subsection (h) of that section provides:

> "Resentencing after revocation of probation or of conditional discharge shall be under Article 4. Time served on probation or conditional discharge shall be credited against a sentence of imprisonment or periodic imprisonment." (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—6—4(h).)

The Unified Code became effective on January 1, 1973, and it applies to the instant case since there has not yet been a final adjudication. (*People v. Harvey*, 53 Ill.2d 585, 294 N.E.2d 269.) Accordingly the defendant is entitled to credit on his sentences for the time he was on probation—computed from the date he was placed on probation to the date that a bench warrant issued for his arrest. Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—6—4; *People v. Burton*, 14 Ill.App.3d 1096, 303 N.E.2d 16.

For the reasons stated the revocation of probation is affirmed, and the cause is remanded with directions to modify the sentences and to issue an amended mittimus reflecting credit for the time served on probation.

Judgment affirmed, sentence modified, remanded with directions.

ADESKO, P. J., and JOHNSON, J., concur.